IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

| | |
|---|---|
| JAMES E. KING, | * |
| Plaintiff, | * |
| v. | *  CV 112-193 |
| JOHN M. McHUGH,<br>Secretary, Department of<br>the Army, | * |
| Defendant. | * |

**O R D E R**

Presently pending before the Court is Defendant John M. McHugh's motion to dismiss. (Doc. no. 13.) For the reasons set forth below, Defendant's motion to dismiss is **GRANTED IN PART** and **DENIED IN PART**.

**I. BACKGROUND**

**A. Factual Background**[1]

This case arises out of a series of workplace disputes between Plaintiff James E. King, a federal civil service employee serving as a police officer at Fort Gordon in Augusta, Georgia, and his supervisor, Lieutenant Richard Peloquin ("Peloquin"). (Am. Compl. ¶ 2.) Defendant is the Secretary of the Army, head of the Agency that employs Plaintiff. (Id. ¶ 3.)

---

[1] In deciding this motion to dismiss, the Court must accept all facts alleged in the complaint as true and construe all reasonable inferences in the light most favorable to Plaintiff. See Hoffman-Pugh v. Ramsey, 312 F.3d 1222, 1225 (11th Cir. 2002).

Although the Amended Complaint is lacking many details, the unrest appears to have begun in December 2009 when Plaintiff testified on behalf of another employee against Peloquin in an Equal Employment Opportunity ("EEO") hearing. (Id. ¶ 10 & Doc. no. 19 at 5.) Subsequently, Peloquin allegedly retaliated against Plaintiff by downgrading Plaintiff's performance evaluations, verbally harassing Plaintiff, and disclosing Plaintiff's private medical information on his work evaluations. (Id. ¶¶ 9, 11, 12.) In response, Plaintiff filed an administrative EEO charge with the Department of the Army's EEO Office ("Agency") in January 2010 regarding the lower performance evaluations. (Id. ¶ 8.) Because the verbal harassment allegedly continued until Peloquin was transferred in March 2011, Plaintiff now claims he was subject to a hostile working environment. (Id. ¶¶ 13-14.)

On July 22, 2010, Plaintiff was injured in the performance of his duties. (Id. ¶ 15.) After receiving medical treatment for his injuries, Plaintiff returned to work the next day. (Id. ¶¶ 16-17.) In a subsequent medical evaluation on August 17, 2010, Dr. Sheryl Bedno placed Plaintiff on "out of work" status until he could be further evaluated by a specialist on September 1, 2010. (Id. ¶ 18; Doc. No. 13, Ex. 2 at 2.) Later on August 17, 2010, Peloquin contacted Plaintiff's physician to allegedly persuade her to change Plaintiff's leave restrictions (so that Plaintiff could return to light duty desk work) and to obtain Plaintiff's private medical information. (Id. ¶ 19.) Believing that Peloquin was retaliating

2

for Plaintiff's January 2010 EEO charge, Plaintiff filed a second administrative EEO charge with the Agency on August 23, 2010. (Id. ¶ 21.) Although the charge alleged only retaliation, Plaintiff now asserts that Peloquin's contact with his physician also constituted racial discrimination. (Id. ¶ 20.)

Though Plaintiff was on leave until September 1, 2010, he did not return to work until September 10, 2010. (Id. ¶ 22.) An issue arose regarding how to classify Plaintiff's absences on September 1, 2, and 6, 2010. In alleged contravention of their discussions, Peloquin marked Plaintiff as Absent Without Leave ("AWOL") for these days resulting in a loss of $850.00 pay to Plaintiff. (Id. ¶¶ 23-25.) With aid of counsel, Plaintiff subsequently filed a Formal Complaint of Discrimination with the Agency on October 1, 2010, alleging two counts of retaliation. (Id. ¶ 26 & Doc. no. 19 at 6.) First, Plaintiff alleged that Peloquin contacted Plaintiff's physician on August 17, 2010, in retaliation for Plaintiff's January 2010 EEO charge. (See Doc. no. 13, Ex. 3 at 1.) Second, Plaintiff alleged Peloquin's imposition of three days AWOL for September 1, 2, and 6, 2010, was also in retaliation for the January 2010 EEO charge. (Id. at 2.) In his Amended Complaint, however, Plaintiff alleges that his being marked AWOL was, in fact, reprisal for his August 23, 2010, EEO charge. (Am. Compl. ¶ 24.)

On May 9, 2012, the Agency adopted the Administrative Judge's Order granting Defendant's motion for summary judgment finding no

3

discrimination on Plaintiff's claims. (See Doc. no. 13, Ex. 5.) On appeal, the Equal Employment Opportunity Commission ("EEOC") affirmed. (See Doc. no. 13, Ex. 6.)

### B. Procedural Background

Plaintiff filed suit in this Court on December 20, 2012, seeking relief under Title VII for acts of race discrimination and retaliation as well as a violation of his medical privacy rights under the Health and Portability and Accountability Act of 1996 ("HIPAA"). (Doc. no. 1.) Defendant moved to dismiss on February 25, 2013. (Doc. no. 5.) In response, Plaintiff filed an Amended Complaint on March 15, 2013. (Doc. no. 7.) In his Amended Complaint, Plaintiff dropped his HIPAA claim while adding a hostile work environment claim. (Am. Compl. ¶ 14.) On April 22, 2013, Defendant filed a motion to dismiss Plaintiff's Amended Complaint. (Doc. no. 13.) Plaintiff and Defendant have responded and replied, respectively, to the motion to dismiss. (Doc. nos. 19, 21.) Thereafter, Defendant filed a motion to stay the dispositive motion deadline on September 3, 2013 (doc. no. 22), which the Court granted on October 1, 2013 (doc. no. 23.)

## II. MOTION TO DISMISS STANDARD

In considering a motion to dismiss under Rule 12(b)(6), the court tests the legal sufficiency of the complaint, not whether the plaintiff will ultimately prevail on the merits. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). The court must accept as true all facts alleged in the complaint and construe all reasonable

4

inferences in the light most favorable to the plaintiff. See Hoffman-Pugh v. Ramsey, 312 F.3d 1222, 1225 (11th Cir. 2002). The court, however, need not accept the complaint's legal conclusions as true, only its well-pled facts. Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009).

A complaint also must "contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" Id. at 678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The plaintiff is required to plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id.

### III. DISCUSSION

By the Court's best estimation, Plaintiff's Amended Complaint asserts three claims of reprisal, one claim of racial discrimination, and one hostile work environment claim. Plaintiff claims he was retaliated against when: (1) in reprisal for his December 2009 testimony, Peloquin lowered Plaintiff's performance evaluations, began to verbally harass Plaintiff, and published Plaintiff's private medical information on his performance evaluations[2] ("first retaliation claim"); (2) in reprisal for his

---

[2] Am. Compl. ¶¶ 9-12.

5

January 2010 EEO charge, Peloquin contacted Plaintiff's physician to alter his leave restrictions and obtain Plaintiff's private medical information[3] ("second retaliation claim"); and (3) in reprisal for his August 23, 2010 EEO charge, Peloquin marked Plaintiff AWOL for September 1, 2, and 6, 2010[4] ("third retaliation claim"). Plaintiff also complains that Peloquin's contact with his physician was racially discriminatory.[5] In addition, Plaintiff asserts he was subject to a hostile working environment by virtue of Peloquin's ongoing verbal harassment from December 2009 to March 2011.[6]

Defendant presents three arguments for dismissal.[7] First, he contends that Plaintiff's third retaliation claim and race discrimination claim are not administratively exhausted, and thus not properly before the Court for review. (See Doc. no. 13 at 9.) Second, Defendant argues that Plaintiff's second retaliation claim fails because Plaintiff has not alleged facts showing either an adverse employment action or the requisite causal connection with the protected activity. (See id. at 11-12.) Third, Defendant contends Plaintiff has failed to state a viable hostile working environment claim. (See Doc. no. 21 at 3.) The Court will first address the threshold issue of whether Plaintiff has administratively exhausted his third retaliation and race

---

[3] Id. ¶¶ 19-20.
[4] Id. ¶ 24.
[5] Id. ¶ 20.
[6] Id. ¶¶ 13-14.
[7] Defendant does not specifically address Plaintiff's first retaliation claim in his motion to dismiss.

discrimination claims before turning to Defendant's remaining arguments for dismissal of Plaintiff's second retaliation and hostile work environment claims.

### A. Administrative Exhaustion

Prior to filing a Title VII action, a plaintiff first must file a charge of discrimination with the EEOC. See Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393 (1982) (filing a timely charge of discrimination with the EEOC is a condition precedent to filing a Title VII action in federal court); see also Gregory v. Ga. Dep't of Human Res., 355 F.3d 1277, 1279 (11th Cir. 2004); Sanchez v. Standard Brands, Inc., 431 F.2d 455, 460 (5th Cir. 1970). The purpose of this exhaustion requirement is that "the [EEOC] should have the first opportunity to investigate the alleged discriminatory practices to permit it to perform its role in obtaining voluntary compliance and promoting conciliation efforts." Evans v. U.S. Pipe & Foundry Co., 696 F.2d 925, 929 (11th Cir. 1983); see also Wu v. Thomas, 863 F.2d 1543, 1548 (11th Cir. 1989) ("The purpose of the filing requirement is to insure that the settlement of grievances be first attempted through the office of the EEOC." (internal quotation and citation omitted)).

In light of the EEOC exhaustion requirement, the Eleventh Circuit has explained that a "plaintiff's judicial complaint is limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." Alexander v. Fulton Cnty., Ga., 207 F.3d 1303, 1332 (11th Cir.

2000). According to the Eleventh Circuit, claims of discrimination other than those in the EEOC charge "are allowed if they 'amplify, clarify, or more clearly focus' the allegations in the EEOC complaint" or if they are "like or related to, or grew out of, the allegations in [the] EEOC charge." Gregory, 355 F.3d at 1279-80 (quoting Wu, 863 F.2d at 1547). Thus, the Eleventh Circuit has advised against a strict interpretation of the EEOC charge scope, instructing instead that courts are "extremely reluctant to allow procedural technicalities to bar claims brought under [Title VII]." Id. at 1280 (quoting Sanchez, 431 F.2d at 460-61).

Even so, the Eleventh Circuit has cautioned that allegations of new acts of discrimination are inappropriate. Wu, 863 F.2d at 1547. Compare Chanda v. Engelhard/ICC, 234 F.3d 1219, 1225 (11th Cir. 2000) (plaintiff's claim of discrimination based on national origin was not administratively exhausted where there was no mention in any of the EEOC filings of discrimination based on national origin or any complaint about such discrimination) and Thomas v. Miami Dade Pub. Health Trust, 369 Fed. Appx. 19, 22 (11th Cir. 2010) (plaintiff's race and sex discrimination allegations were not administratively exhausted where plaintiff's EEOC charge asserted that the failure to promote her was the result of retaliation) with Gregory, 355 F.3d at 1280 (plaintiff's retaliation claim which was not alleged in the EEOC charge was not administratively barred where "the facts alleged in [plaintiff's] EEOC charge could have reasonably been extended to encompass a

8

claim for retaliation because they were inextricably intertwined with [Plaintiff's] complaints of race and sex discrimination").[8]

At issue here is whether Plaintiff's third retaliation claim (Peloquin charging Plaintiff three days AWOL in reprisal for August 23, 2010 EEO charge) and race discrimination claim are barred for failure to administratively exhaust. After a detailed review of the EEO filings, the Court determines (1) Plaintiff's third retaliation claim was administratively exhausted, and (2) Plaintiff's race discrimination claim was not administratively exhausted.

### 1. Third Retaliation Claim

In his Amended Complaint, Plaintiff alleges that he exhausted his administrative remedies because the Agency investigated his Formal Complaint of Discrimination and issued its final decision which was affirmed by the EEOC on September 27, 2012. (Am. Compl. ¶ 6.) Defendant, however, urges dismissal of Plaintiff's third retaliation claim because Plaintiff originally alleged (in his Formal Complaint of Discrimination) that Peloquin's AWOL determination was in reprisal for his January 2010 EEO charge. But now, Plaintiff asserts it was in reprisal for his August 23, 2010 charge. (Am. Compl. ¶ 24.) Defendant argues this alteration

---

[8] Although Gregory appears to be somewhat of an outlier amidst this Circuit's Title VII jurisprudence, the Eleventh Circuit has explained that because the EEOC charge in Gregory was prepared without the assistance of counsel, it was liberally construed. Thus, the Court held that the plaintiff had alleged facts that reasonably encompassed a retaliation claim. Jerome v. Marriott Residence Inn Barcelo Crestline/AIG, 211 Fed. Appx. 844, 846 (11th Cir. 2006).

demands dismissal because it was not first presented to the EEOC. The Court disagrees.

As noted above, the Eleventh Circuit cautions against a hyperactive review for procedural technicalities and permits claims that are "like or related to" or further clarify EEOC charges. Here, Plaintiff alleged facts that prompted an EEO investigation into Peloquin's potentially retaliatory practices in charging Plaintiff three days AWOL. It is plain to the Court that Plaintiff's claim that Peloquin retaliated against him for his August 23, 2010 EEO charge could "reasonably be expected to grow out of" his original claim that Peloquin retaliated against him for his January 2010 charge. This Circuit's precedent is clear that this is sufficient to exhaust his administrative remedies on this retaliation claim. Accordingly, Defendant's motion to dismiss Plaintiff's third retaliation claim is **DENIED**.

### 2. Race Discrimination Claim

Plaintiff contends that his race discrimination claim was also exhausted because his Formal Complaint of Discrimination was investigated and ruled upon by the EEOC. (Am. Compl. ¶ 6.) However, Plaintiff's Formal Complaint of Discrimination does not contain a single allegation or mention of racial discrimination.[9]

---

[9] The Court can properly consider Plaintiff's Formal Complaint of Discrimination, without first converting Defendant's motion to dismiss into a motion for summary judgment. See Chesnut v. Ethan Allen Retail, Inc., No. 3:13-cv-112, 2013 WL 5290123 (N.D. Ga. Sept. 20, 2013). "In ruling on a motion to dismiss, the district court may consider an extrinsic document if (1) it is central to the plaintiff's claim, and (2) its authenticity is not challenged. Further, a document central to the complaint that the defense appends to its motion to dismiss is also properly considered, provided that

(Doc. no. 13, Ex. 3 at 1.) In Section I, Plaintiff identified "reprisal" as the only basis of discrimination.[10] (Id.) Also, when describing his allegations of discrimination, Plaintiff stated "This was a continue [sic] reprisal against me for prior EEO complaint." (Id.) Further, Plaintiff explained that he "would like $100,000 for [Peloquin] violating my medical privacy for the second time and using it against me for reprisal." (Id.)

Consequently, Plaintiff's claims, as presented to the EEOC, do not allege any facts other than possible reprisal. Crucially, the facts alleged, investigated, and ruled on by the EEOC are not "like or related to" facts that would support a racial discrimination claim. Plaintiff's EEOC filings do not contain a single reference to either Plaintiff's or Peloquin's race. Nor do they contain any allegation that Plaintiff was treated differently than similarly situated white employees. The Court must conclude, therefore, that a reasonable investigation into Plaintiff's Formal Complaint of Discrimination would not encompass racial discrimination based on Plaintiff's complaints about reprisal. Accordingly, Defendant's motion to dismiss Plaintiff's racial discrimination claim is **GRANTED**.

---

its contents are not in dispute. In discrimination cases, the EEOC charge is a document that courts routinely consider when ruling on motions to dismiss, even if it was not attached to a pleading." Id. Defendant attached Plaintiff's Formal Complaint of Discrimination to his motion to dismiss, and Plaintiff has not disputed any of its contents.

[10] Despite containing boxes for race, color, sex, age, national origin, and disability discrimination, Plaintiff marked only the box indicating reprisal.

11

B.  Second Retaliation Claim

Plaintiff also alleges that he was subject to reprisal for his January 2010 EEO charge when Peloquin contacted Plaintiff's physician, requested that the physician alter his leave restrictions, and obtained his private medical information. (Am. Compl. ¶¶ 19-20.) Defendant argues this claim should be dismissed because Plaintiff's allegations do not establish either an adverse employment action or the requisite causal connection necessary to state a viable retaliation claim. Because it is clear that Plaintiff's allegations fail to demonstrate a causal relationship between his protected activity and the alleged adverse action, the Court does not review whether Plaintiff has properly alleged an adverse employment action.

To state a retaliation claim under Title VII, a "plaintiff must show that (1) [he] engaged in statutorily protected activity, (2) an adverse employment action occurred, and (3) the adverse action was causally related to the plaintiff's protected activities." Little v. United Techs., Carrier Transicold Div., 103 F.3d 956, 959 (11th Cir. 1997). To prove a causal connection, the plaintiff must "demonstrate that the protected activity and the adverse action were not wholly unrelated." Farley v. Nationwide Mut. Ins. Co., 197 F.3d 1322, 1337 (11th Cir. 1999).

According to the Eleventh Circuit, a plaintiff may satisfy this element "by providing sufficient evidence that the employer knew about the protected activity and that there was close temporal

12

proximity between the protected activity and the materially adverse action." Thomas v. CVS/Pharmacy, 336 Fed. Appx. 913, 915 (11th Cir. 2009). However, "'[m]ere temporal proximity' must be 'very close.'" Id. (quoting Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001)). A period of three months or more is too protracted a delay to support a finding of causation. See Higdon v. Jackson, 393 F.3d 1211, 1221 (11th Cir. 2004) (a three month period "does not allow a reasonable inference of a causal relation"); Thomas, 336 Fed. Appx. at 915-16 (same); Miller v. Lectra USA, Inc., 145 Fed. Appx. 315, 318 (11th Cir. 2005) (seven month gap is not sufficient to establish a causal connection).

Here, Plaintiff has not pled facts demonstrating a causal connection between his protected January 2010 activity and Peloquin's alleged retaliatory acts in August and September 2010. Although dates were not pled in the Amended Complaint, it is clear that Plaintiff filed an EEO charge in January 2010. (See Doc. no. 19 at 5.) Plaintiff subsequently complained of retaliatory conduct in August 2010 based on Peloquin's contact with Plaintiff's physician. According to this Circuit's precedent, this seven-month period, standing alone, is insufficient to establish the temporal proximity required to show a causal relationship between the protected activity and the adverse action.

Unable to rely on temporal proximity, Plaintiff attempts to show a causal relationship by alleging that Peloquin's contact with his physician was just one episode in a series of "ongoing

13

systematic harassment" that began in December 2009 and culminated in September 2010. (Doc. no. 19 at 8.) Specifically, Plaintiff alleged that "[a]fter Plaintiff testified in the [December 2009] EEO hearing, Lieutenant Peloquin, in retaliation, began to verbally harass Plaintiff and downgraded Plaintiff's performance evaluations." (Am. Compl. ¶ 11.) Peloquin also "improperly annotated Plaintiff's work evaluation form with reference to five days sick leave." (Id. ¶ 12.) This "harassment of Plaintiff by Lieutenant Peloquin continued until March 2011 when Lieutenant Peloquin was reassigned." (Id. ¶ 13.) Plaintiff alleges that this conduct amounted to a hostile work environment. (Id. ¶ 14.)

This argument fails. The allegation that Peloquin "began to verbally harass Plaintiff" is conclusory and therefore unsupportive of any inference of causation. Iqbal, 556 U.S. at 678. Similarly, the allegations that the harassment continued until March 2011 and that Defendant permitted a hostile working environment to exist are likewise conclusory. Id. Consequently, the only supportive allegation in the Amended Complaint indicating the alleged ongoing systematic harassment is the allegation that Peloquin improperly downgraded Plaintiff's performance evaluations in reprisal for Plaintiff's December 2009 testimony. (Id. ¶ 11.) However, standing alone, this allegation does not permit a reasonable inference that Peloquin contacted Plaintiff's physician in retaliation for his January 2010 protected activity. Despite Plaintiff's new allegations of harassment, Plaintiff has failed to

14

plead facts demonstrating the requisite causality to support his claim that Peloquin contacted his physician in retaliation for Plaintiff's January 2010 EEOC charge. Accordingly, Defendant's motion to dismiss Plaintiff's second retaliation claim is **GRANTED**.

### C. Hostile Work Environment Claim

Moreover, to the extent that Plaintiff attempts to assert a hostile work environment claim in his Amended Complaint, any such claim is properly dismissed. Notwithstanding the issue of whether Plaintiff administratively exhausted his hostile working environment claim, Plaintiff has failed to plead facts establishing a *prima facie* case for hostile work environment. To establish a hostile work environment claim under Title VII, a plaintiff must show that: (1) he belongs to a protected group; (2) he was subjected to unwelcome harassment; (3) that harassment was based on his membership in the protected group; (4) the harassment was severe or pervasive enough to alter the terms and conditions of employment and create a hostile or abusive working environment; and (5) the employer is directly or vicariously liable for such environment. Jones v. UPS Ground Freight, 683 F.3d 1283, 1292 (11th Cir. 2012).

Plaintiff has not alleged *facts* showing that he was subjected to harassment or that the harassment was severe or pervasive. As discussed above, Plaintiff's allegations that he was verbally harassed by Peloquin sometime after his December 2009 protected activity and that such harassment continued until March 2011 are

15

purely conclusory. As such they are insufficient to establish a *prima facie* claim of a hostile working environment. Moreover, Plaintiff has failed to allege facts demonstrating that such harassment was severe or pervasive. Consequently, Defendant's motion to dismiss Plaintiff's hostile work environment claim is **GRANTED**.

### IV. CONCLUSION

Based upon the foregoing, Defendant's motion to dismiss (doc. no. 13) is **GRANTED IN PART** and **DENIED IN PART**. Additionally, pursuant to the Court's October 1, 2013 Order (doc. no. 23) staying the civil motions deadline until the Court's ruling on the instant motion to dismiss, it is **FURTHER ORDERED** that the parties shall have through **March 14, 2014**, to file any civil motions, including Daubert motions, but excluding motions in limine.

**ORDER ENTERED** at Augusta, Georgia, this 14th day of February, 2014.

```
_____
HONORABLE J. RANDAL HALL
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA
```