IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

| | |
|---|---|
| JAMES E. KING, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 1:12-cv-00193-JRH-WLB |
| ) | |
| JOHN McHUGH, Secretary, ) | |
| Department of the Army, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

John McHugh, Secretary of the Department of the Army, ("Army" or "Defendant"), by and through the United States Attorney for the Southern District of Georgia, and the undersigned Assistant United States Attorney, in accordance moves for summary judgment pursuant to Federal Rules of Civil Procedure ("Fed. R. Civ. P.") 56(c) because there are no genuine issues of material facts and he is entitled to judgment as a matter of law.

## I. INTRODUCTION

Plaintiff James E. King filed this action alleging racial discrimination and reprisal on December 20, 2012 and the instant amended complaint on March 15, 2013. (Docs. 1 and 7). Plaintiff seeks money damages and equitable relief under Title VII ("Title VII") of the Civil Rights Act of 1964 (as amended), 42 U.S.C. § 2000e *et seq.*[1] (Doc. 7). By Order dated February 14, 2014, this Court dismissed all of Mr. King's claims with the exception of his "third retaliation claim" which the Court describes as "Peloquin charging Plaintiff three days AWOL in reprisal for August 23, 2010 EEO charge." (Doc. 28 at 8). This Court should dismiss Plaintiff's

---

[1] Title VII's anti-retaliation provisions, 42 U.S.C. § 2000e-3(a), prohibits retaliation by federal employers. 42 U.S.C. § 2000e-16(a) (extending Title VII provisions to federal employees).

1

remaining claim regarding the September 1, 2010 AWOL charge because the police chief rescinded that AWOL charge when Mr. King appealed the charges under the Fort Gordon union grievance procedures.  Additionally, Plaintiff's remaining claim regarding all three of the AWOL charges as retaliation must fail because he cannot show that the actions were motivated by reprisal or otherwise rebut the Army's legitimate, non-retaliatory reasons for charging him AWOL.

A. **Statement of Facts**

Plaintiff James King has been employed as a Fort Gordon Police Officer since January 2009.  At all times relevant, his immediate supervisor was Lieutenant (Lt.) Richard Peloquin and his second-level supervisor was Chief Willie McClinton.  It is undisputed that on July 22, 2010, King injured his knees and left thumb when he fell on concrete while apprehending a suspect and the incident was treated as a workplace injury.  Following the incident, Mr. King was seen by a physician at Dwight David Eisenhower Army Medical Center (Eisenhower Medical Center) Emergency Room, on Fort Gordon.  The attending physician diagnosed Mr. King with bilateral knee contusions and a left thumb strain, and excused him from work for one (1) day.

Three days later, on July 27, 2010 Major (MAJ) Sheryl Bedno, Chief of Occupational Health at Eisenhower Medical Center, evaluated Mr. King for a return to duty assessment. However, because of continued pain and swelling, Dr. Bedno recommended Mr. King remain on bed rest until his next evaluation on July 30, 2010.  On July 28-29, 2010, Mr. King voluntarily returned to work for unscheduled overtime and for his regularly scheduled shift beginning on July 30, 2010.  A few weeks later, on August 17, 2010, Mr. King made an appointment to see Dr. Bedno because he was still having "problems" with his knees and thumb.

Following her evaluation, Dr. Bedno stated:

> [King] will be referred for evaluation and possible treatment. At that time, a determination will be made as far as disposition. I recommend that he not continue to work on patrol at this time but if available, can do light duty. Light duty needs to be defined at the time of his consultation with Sports Medicine/Orthopedics.

Mr. King then scheduled his appointment with Sports Medicine for September 1, 2010. At Chief McClinton's direction, Lt. Peloquin sought clarification from Dr. Bedno as to what "light duty" entailed. Dr. Bedno requested King return to her office for further evaluation because his appointment with Sports Medicine was not scheduled for some time.[2]

On or around September 1, 2010, after being seen by the Sports Medicine physician, King notified Lt. Peloquin that he would not be at work for his scheduled shift that night. Following receipt of King's e-mail, Lt. Peloquin emailed Heather Grosvenor, the Human Resources Representative in the Fort Gordon Civilian Personnel Advisory Center (CPAC), to seek guidance on how to code Mr. King's absence on the time sheet. Mr. King was copied on this e-mail.

Lt. Peloquin believed that King was not returning to work due to a complication with his injury. On September 2, 2010, King responded to Peloquin's September 1, 2010 e-mail, stating that Lt. Peloquin previously misunderstood and that the Sports Medicine doctor had to review his x-ray before he could recommend light duty. King further stated, "Lt. Peloquin I will be returning to work on Tuesday September the 7th," after the Labor Day holiday weekend.

On the same day, Lt. Peloquin advised King that he would need to provide medical documentation for absences after his appointment with Sports Medicine because Dr. Bedno's

---

[2] King was required to keep Lt. Peloquin informed and provide proper medical excuses over the course of his injury. Under Department of the Army (DA) policy, a federal employee who is absent on sick leave for more than three consecutive dates is required to submit a doctor's note. An employee may be charged AWOL for failure to provide adequate medical documentation. U.S. Army Signal Center-AFGE Local 2017 Fort Gordon Labor-Management Agreement (CBA) provides that non-firefighter personnel with absences due to being sick for five or more consecutive work days must provide a medical certificate to support the entire period of absence.

medical excuse only excused him on Leave Traumatic Injury until his Sports Medicine appointment. Because the appointment took place on September 1, 2010, King was to provide a new medical excuse or profile if his injury required leave applicable to absences after September 1, 2010.

On September 3, 2010, at 11:34 p.m., King emailed Lt. Peloquin the Form CA-17, Duty Status Report, dated September 1, 2010, which stated that King could report to work on light duty on September 2, 2010. Lt. Peloquin advised Mr. King to let him know if he wanted to request Holiday Leave for Labor Day, September 6, 2010. Despite his supervisor's instructions, Mr. King did not report for work or request leave for the holiday. According to Mr. King, "you can't work on holidays while you're on light duty" so he chose not to report to work. King did however request annual leave for September 7, 2010, which Lt. Peloquin approved. [3]

King did not report for his scheduled duty over the next few days– September 2 and September 6. King returned to work on September 10, 2010 and did not provide a doctor's

---

[3] When asked directly, Plaintiff describes his schedule as follows:

Q: Even if you had not been on light duty on September 6th, would you have been scheduled to work on the 7th, 8th, 9th or 10th?

A: No. No, the 10th I have. The 10th – I think the 7th I was scheduled. I'm not sure. But he didn't mark me AWOL for the 7th. So the 10th I was supposed to be scheduled, but the – the days in between, no. The 1st, 2nd, the 6th – I was off the 4th and 5th. And then the 6th, I should have been off because, like I say, I was on light duty, and you can't work holidays while you're on light duty. *See* Ex. 1 at Ex. 12 (Deposition of James E. King at 38:2-12).

| Sunday | Monday | Tuesday | Wednesday | Thursday | Friday | Saturday |
|---|---|---|---|---|---|---|
|  |  |  | 1<br>King apt. with Sports Medicine | 2<br>King fails to return to duty | 3<br>NOT SCHEDULED | 4 |
| 5 | 6<br>**LABOR DAY**<br>King fails to return to duty | 7<br>ANNUAL LEAVE | 8<br>NOT SCHEDULED | 9<br>NOT SCHEDULED | 10<br>King returns to work without excuse | 11 |
| 12 | 13 | 14 |  |  |  |  |

4

excuse for his absences.  Having received no response from King, on September 8, 2010 Lt. Peloquin again sought human resources advice from Ms. Grosvenor on how to properly charge King's absences September 1-2 and 6, 2010.  Lt. Peloquin needed this information prior to the end of the pay period, September 11, 2010.  He did not receive a response.

On September 11, 2010, Lt. Peloquin again requested a doctor's excuse for King's absences and King told him that he did not have documentation.  According to King,

> Peloquin said, "Well, I'm going to need you to give me a doctor's note so you could use your sick leave or your annual leave or whichever one you're going to use." You know, like I said, again I said, "It's only been one day. "Why I need a doctor's note?" He said, "Because I need a doctor's note from you." I said, "Okay. Fine. I'll go back and get the doctor's note for you Monday.[4]

King did not provide a medical excuse to Lt. Peloquin on Monday, September 13, 2010 and Lt. Peloquin charged King AWOL for September 1-2 and 6, 2010, for a total of 37.5 hours.  The AWOL was charged because King failed to provide a doctor's excuse for his absence on September 1, 2010, after the doctor's appointment or for his absences on September 2 and 6, 2010.  Lt. Peloquin informed Chief McClinton that King had been marked AWOL.

Even after documenting King AWOL, Lt. Peloquin continued to seek HR guidance as to whether he correctly charged Plaintiff AWOL.  According to Lt. Peloquin's conversations with United States Army Time Attendance and Production System (ATAAPS) personnel, Peloquin's decision to charge King as AWOL was consistent with Fort Gordon policy.  Also, Lt. Peloquin could change the designation to sick leave if King submitted a doctor's excuse at a later date.

On September 12, 2010, Lt. Peloquin notified King that he was marked AWOL for 12.5 hours on September 1, September 2, and September 6, 2010 for a total of 37.5 hours.  King appealed the AWOL charges to Chief McClinton pursuant to union grievance procedures.  After

---

[4] *See* Ex. 1, L.R. 56 Statement of Material Facts at Ex. 12 (Dep. of James King at 37:8-16).

investigation and in consultation with management, Chief McClinton rescinded the AWOL charged on September 1, 2010, the day of King's sports medicine doctor's appointment. Despite King's protests, Chief McClinton was forced to uphold the AWOL designations for September 2 and 6, 2010 in light of the applicable policy regarding medical excuses for absences.

In rendering his decision, Chief McClinton found that King was not required to report for duty on September 1, 2010 because he was seen in the doctor's office that day; however, he found that King should have returned to work on September 2, 2010 because the medical documentation he provided cleared him to return to duty that day. Moreover, King never provided any additional documentation to support his claim of entitlement to medical leave.

Chief McClinton ultimately decided that the September 2 and 6, 2010, AWOL charges were proper because King failed to request and receive approval for leave on those dates. On October 1, 2010, Mr. King filed a Formal Complaint of Discrimination with the EEO. The EEO Office accepted for investigation, *inter alia*, Mr. King's claim that he was discriminated against as reprisal when his first-line supervisor charged him three days' AWOL for days that he was on restricted leave due to his on-the-job injury. On May 9, 2012, the EEO issued a Final Administrative Decision ("FAD") implementing the Equal Employment Opportunity Commission ("EEOC") Administrative Judge's decision without a hearing finding no discrimination. On September 27, 2012, the EEOC Office of Federal Operations ("EEOC OFO") affirmed the FAD, finding no discrimination.

## II. MEMORANDUM OF AUTHORITIES AND ARGUMENT

### A.     The Summary Judgment Pleading Standard

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The movant bears

the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact. *Four Parcels of Real Property*, 941 F.2d 1428, 1438 (11th Cir. 1991) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)).

In Kernel Records Oy v. Mosley, 694 F.3d 1294, 1300-01 (11th Cir. 2012) (internal citations and punctuation omitted) (emphasis added), *cert. denied*, 2013 WL 372937 (Apr. 15, 2013), the Eleventh Circuit recently reiterated the summary judgment standard succinctly:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine factual dispute exists only if a reasonable fact-finder could find by a preponderance of the evidence that the plaintiff is entitled to a verdict.... Once the movant adequately supports its motion, the burden shifts to the nonmoving party to show that specific facts exist that raise a genuine issue for trial.

When the moving party has met its Rule 56(c) burden, the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings. The nonmovant "must support the assertion by . . . citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1); *see also Resolution Trust Corp. v. Dunmar Corp*., 43 F.3d 587, 599 (11th Cir. 1995) ("There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment."). Moreover, "the non-moving party must produce substantial evidence in order to defeat a motion for summary judgment." *Penley v. Eslinger*, 605 F.3d 843, 848 (11th Cir. 2010) (quoting *Garczynski v. Bradshaw*, 573 F.3d 1158, 1165 (11th Cir. 2009)).

When determining whether a genuine issue of material fact has been established, a reviewing court is required to construe all facts and inferences in the light most favorable to the nonmovant. *Shotz v. City of Plantation, Fla*., 344 F.3d 1161, 1164 (11th Cir. 2003). However, this requirement extends only to genuine disputes over material facts. Fed. R. Civ. P. 56(c). "A

genuine dispute requires more than some metaphysical doubt as to the material facts . . . [and a] mere scintilla of evidence is insufficient." *Garczynski*, 573 F.3d at 1165. With specific regard to employment discrimination cases, the focus is on whether the defendant intentionally discriminated against the plaintiff. *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 253 (1981).

*Celotex* and *Anderson* conditioned a litigant's right to a day in court on that litigant's ability to show that a practical purpose will be served by affording them that day. *See Celotex*, 477 U.S. at 327 ("Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'") While the trial court must consider all reasonable doubts in favor of the nonmoving party, it is not required to resolve all doubts in such a manner. *Barnes v. Southwest Forest Indus., Inc.*, 814 F.2d 607, 609 (11th Cir. 1987). Indeed, if the non-movant's response is merely a repetition of his conclusory allegations, summary judgment should be granted to the moving party. *Morris v. Ross*, 663 F.2d 1032, 1034 (11th Cir. 1981), *cert. denied*, 456 U.S. 1010 (1982); *Graham v. State Farm Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir. 1994).[5]

### B.     The Burdens of Proof as to a Title VII Retaliation Claim.

Plaintiff alleges that he was retaliated against in violation of Title VII for filing an EEO complaint against Lt. Peloquin on August 23, 2010. (Doc. 7). The referenced but unrelated

---

[5] Summary judgment may also be granted based upon facts developed during the administrative proceedings, the pleadings, and supplemental affidavits. *Taylor v. Renfro Corp.*, 84 F. Supp. 2d 1248, 1253 (N.D. Ala. 2000) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)); *see also Yartzoff v. Thomas*, 809 F.2d 1371, 1374-75 (9th Cir. 1987); *Chalk v. Secretary of Labor*, 565 F.2d 764 (D.C. Cir. 1977), *cert. denied*, 435 U.S. 945 (1978); *Ballinger v. North Carolina Agric. Ext. Serv.,* 815 F.2d 1001, 1004, 1006 (4th Cir. 1987) (considering the administrative record in affirming an order granting summary judgment); *Sperling v. United States*, 515 F.2d 465, 484 (3d Cir. 1975) (agency record can be reviewed on a motion for summary judgment); *Simmons v. Marsh*, 690 F. Supp. 1489, 1491 n.12 (E.D. Va. 1988), *aff'd*, 852 F.2d 566 (4th Cir. 1988) (holding that even though a Federal sector employee is entitled to a *de novo* hearing, the court should consider a well-developed record, which included the transcript of sworn testimony before the EEOC, in deciding whether to grant summary judgment to defendant).

August 23, 2010 EEO Complaint arose from Plaintiff's allegations that Lt. Peloquin violated Plaintiff's medical privacy rights in connection with his work related injury.  (Doc. 7 at ¶ 24).  According to Plaintiff, his charges of AWOL were initiated by Lt. Peloquin to "dissuade Plaintiff and others from supporting charges of discrimination."  (*Id.* at ¶ 27).  Plaintiff alleges that Lt. Peloquin "den[ied] annual leave and impos[ed] an AWOL status for Plaintiff's time off to recover from an on the job injury" as a reprisal against Plaintiff for bringing EEO claims and testifying against his supervisor in a separate EEOC matter.  (*Id.* at ¶ 30).

Title VII establishes that, in the federal sector context, it is an "unlawful employment practice" to discriminate against an employee on the basis of "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a); 42 U.S.C. § 2000e-16.  To establish a *prima facie* case of Title VII retaliation, a plaintiff must show that (1) he engaged in statutorily protected activity; (2) he suffered a materially adverse employment action; and (3) there was a causal link between the two.  *Dixon v. The Hallmark Cos., Inc.*, 627 F.3d 849, 856 (11th Cir. 2010).

Under the *McDonnell Douglas* framework, a plaintiff has the initial burden to establish a *prima facie* case of retaliation, which creates a presumption that the employer retaliated against the plaintiff.  *Id.*  If the plaintiff establishes a *prima facie* case, the burden of production shifts to the employer to provide a legitimate, nonretaliatory reason for the action taken, which rebuts the presumption of retaliation.  *Id.*  The plaintiff is then afforded an opportunity to show that the employer's stated reason is a pretext for retaliation.  *Id.*

The employer's burden of production of a legitimate business reason for the challenged action is "exceedingly light."  *Meeks v. Computer Assoc. Intern.*, 15 F.3d 1013, 1021 (11th Cir. 1994) (internal citation omitted).  "The burden of production shifts but the burden of persuasion remains with the plaintiff."  *Id.* (internal citations and punctuation omitted).

> Title VII does not require the employer's needs and expectations to be objectively reasonable; it simply prohibits the employer from discriminating on the basis of membership in a protected class. We do not sit as a "super-personnel department," and it is not our role to second-guess the wisdom of an employer's business decisions-indeed the wisdom of them is irrelevant-as long as those decisions were not made with a discriminatory motive.... That is true no matter how medieval a firm's practices, no matter how high-handed its decisional process, no matter how mistaken the firm's managers....

*Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1266-67 [citing *Nix v. WLCY Radio/Rahall Commc'ns*, 738 F.2d 1181, 1187 (11th Cir. 1984) ("[An] employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason.")].

The defendant need not persuade the court that it was actually motivated by the proffered reasons. *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981). If the defendant carries this burden of production, the presumption raised by the prima facie case is rebutted, and the factual inquiry proceeds to a new level of specificity. *Texas Dep't of Cmty. Affairs*, 450 U.S. at 255. To avoid dismissal on the employer's motion for summary judgment, the employee must show that the employer's putative legitimate, nondiscriminatory reason was not its real motivation, but was merely a pretext for discrimination. *Patrick v. Ridge*, 394 F.3d 311, 315-16 (5th Cir. 2004) (citing *McDonnell Douglas*, 411 U.S. at 804); *Jackson v. State of Ala. State Tenure Comm'n*, 405 F.3d 1276, 1289 (11th Cir. 2005). Although the intermediate evidentiary burdens shift back and forth under the *McDonnell Douglas* framework, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 805-86, 93 S. Ct. 1817, 1826, 36 L.Ed.2d 668 (1973); *Reeves v. Sanderson Plumbing Prods. Inc.*, 530 U.S. 133 (2000); *St. Mary's Honor Ctr. v. Hicks*, 509 U.S 502 (1993).

1. **Plaintiff's Retaliation Claim Arising from the September 1, 2010 AWOL Charge Must Fail Because the Decision was Intermediate, Rescinded On Appeal, and Not A Materially Adverse Action.**

The Eleventh Circuit has made clear that not all conduct by an employer negatively affecting an employee constitutes an actionable adverse employment action. *Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1238 (11th Cir. 2001). To prove an adverse employment action an employee must show a serious and material change in the terms, conditions, or privileges of employment. *Id.* The employee's subjective view of the significance and adversity of the employer's action is not controlling because the employment action must be materially adverse as viewed by a reasonable person in the circumstances. *Id.* at 1239; *see also Wallace v. Georgia Dep't of Transp.*, 212 F. Appx 799, 801 (11th Cir. 2006).

In this case, Plaintiff cannot show that he suffered a materially adverse action with regard to the September 1, 2010 AWOL charge because the charge was later rescinded by Chief McClinton. Pursuant to the established union grievance procedure, Plaintiff appealed the AWOL charges to Chief McClinton and the Director of Emergency Management Services at Fort Gordon. Upon investigation and after consultation with the Fort Rucker CPAC, Chief McClinton rescinded the September 1, 2010 AWOL charge. In order to prevail, Plaintiff must show that a reasonable employee would have found the charges of AWOL materially adverse, such that the AWOL charges might have dissuaded a reasonable worker from making or supporting a charge of discrimination. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006) (citations omitted). This is because "[t]he anti-retaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm." *See id.* at 67.

Plaintiff cannot show that he was injured or harmed by the AWOL charge for September 1, 2010 because it was intermediate, rescinded on appeal, and all lost wages were repaid. Taken

11

alone, the September 1, 2010 AWOL marking had little to no significant impact on his employment. *See e.g. Hall v. Dekalb Cty Govt,* 503 Fed. Appx. 781, 790 (11th Cir. 2013) (concluding that a written counseling was not a materially adverse action because the plaintiff had failed to allege that it had any significant impact on his employment). Thus, within the context of the facts of this case, the September 1, 2010 AWOL marking at issue is not a materially adverse action that can support Plaintiff's instant retaliation claim. For this reason, Defendant should be granted summary judgment as to Plaintiff's retaliation claim relating to the September 1, 2010 AWOL Charge.

### 2. Plaintiff Cannot Rebut the Army's Legitimate Nondiscriminatory Reasons For Its Actions.

Each of Plaintiff's retaliation claims arising from the AWOL markings fail because he cannot show that the Army's legitimate, nonretaliatory reasons for its actions were pretext. In order to create a genuine issue of material fact on the question of pretext, Plaintiff must demonstrate that the Army's proffered legitimate business reasons were not the real reasons for its employment decisions. *Jackson v. State of Ala. State Tenure Comm'n*, 405 F.3d 1276, 1289 (11th Cir. 2005). When, as here, there is no direct evidence of retaliation, a plaintiff must demonstrate "such weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable fact finder could find them unworthy of credence." *Cooper v. S. Co.*, 390 F.3d 695, 725 (11th Cir. 2004), *overruled on other grounds*. "Mere general allegations which do not reveal detailed and precise facts will not prevent the award of summary judgment." *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 592 (11th Cir. 1995) (citation omitted).

Plaintiff simply cannot rebut that the Army's legitimate, non-retaliatory reason for charging Plaintiff AWOL was Plaintiff's own refusal to follow the established leave procedures.

Defendant charged and later upheld AWOL for September 2 and 6, 2010 because Plaintiff should have returned to work on September 2, 2010 and did not. Coupled with this fact, he provided no medical documentation in support of his absences which he attributed to his injury– even after documentation was specifically requested. The undisputed record evidence shows that Plaintiff did not report for duty from August 17, 2010 to September 10, 2010. The record evidence further shows that both the DA and CBA leave policies and procedures require that an employee request leave and submit medical documentation to support sick leave is to be submitted upon return to work.[6]

At best, Plaintiff had only a light duty excuse and no documentation that could be construed as an excuse for continued absence. To date, Plaintiff has failed to provide any medical documentation for his September 2 and 6, 2010 absences, despite his supervisor notifying him of the submission requirement and the opportunity to do so even after the AWOL charge was rendered. When provided an opportunity, Plaintiff did not attempt to remedy his situation by requesting annual leave as allowed under established leave procedures. Instead, Plaintiff failed to respond to Lt. Peloquin's direct inquiry as to whether Plaintiff wanted to request leave for September 6, 2010. This fact especially undermines Plaintiff's allegation that Lt. Peloquin charged him AWOL in retaliation for participation in prior protected activity because Lt. Peloquin designated Plaintiff's September 7, 2010, absence as annual leave following Plaintiff's request.[7]

Plaintiff's retaliation allegations are simply unsupported and unsubstantiated by the record. Plaintiff cannot identify a comparator who had a similar leave history to that of Plaintiff or show that the AWOL charges were motivated by anything other than Plaintiff's failure to

---

[6] Under DA policy, 3 or more absences and under CBA, 5 or more absences.
[7] Plaintiff testified during the FFC that he requested annual leave for September 7, 2010 because he did not have sick leave available.

follow established leave procedures and Lt. Peloquin's effort to manage his personnel. *See McGill v. Munoz,* 203 F.3d 843, 847–48 (D.C. Cir. 2000) (evidence that federal agency discriminated against an employee by requiring her to provide doctor's note for requested sick leave insufficient for submission to a jury, where the requirement "complied with the written sick leave policy" and there was no evidence that similarly situated employees were treated differently).

"Where pretext is an issue, the question that the factfinder must answer is whether the employer's proffered reasons were a 'coverup for a … discriminatory decision.'" *Rojas v. Florida*, 285 F.3d 1339, 1342 (11th Cir. 2002) (quoting *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 805-86, 93 S. Ct. 1817, 1826, 36 L.Ed.2d 668 (1973)). Plaintiff has furthered no evidence that Defendant's proffered explanation was false. Plaintiff cannot demonstrate that a retaliatory reason motivated Defendant's choices or that the reasons stated for the choices are "unworthy of credence."[8] *Whitby v. Sec'y for Dep't of Homeland Sec.*, 480 F. Appx 960, 966 (11th Cir. June 28, 2012) (not published in F.3d). In evaluating the record for evidence of pretext, the court's inquiry is limited to the employer's mindset, as the "pretext inquiry is concerned with the employer's perception of the employee's performance, not the employee's own beliefs." *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1332–33 (11th Cir.1998). "Provided that the proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it, and the employee cannot succeed by

---

[8] Even if Lt. Peloquin's decision to charge Plaintiff AWOL for September 1, 2010 was later rescinded, this is not probative to Plaintiff's retaliation claim, particularly as Chief McClinton rescinded this AWOL charge when Plaintiff appealed the charges pursuant to established grievance procedures. *See Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1187 (11th Cir. 1984) (citing *Megill v. Bd. of Regents*, 541 F.2d 1073, 1077 (5th Cir. 1976) (An employer can make a business decision "for a good reason, a bad reason . . . or for no reason at all, as long as its action is not for a discriminatory reason.")).

simply quarreling with the wisdom of that reason." *Chapman v. AI Transport*, 229 F.3d 1012, 1030 (11th Cir. 2000).

There is no evidence in the record–nor has Plaintiff advanced any plausible theories– upon which a reasonable trier of fact could infer that the Army's reasons for issuing the three AWOL charges were pretext for intentional retaliation for Plaintiff's EEO activities. Therefore, this Court should grant summary judgment in favor of the Army as to each of Plaintiff's retaliation claims. Plaintiff cannot produce any evidence to prove the essential elements of his claims, let alone substantial evidence as required to survive summary judgment. As such, Defendant is entitled to summary judgment in his favor.

## III.  CONCLUSION

**WHEREFORE**, Defendant prays that this Court grant summary judgment in Defendant's favor on Plaintiff's retaliation claim, that all costs be assessed against Plaintiff, and that the Court grant such other and further relief it deems just and proper.

This 4th day of June, 2014.

Respectfully Submitted,

EDWARD J. TARVER
UNITED STATES ATTORNEY

/s Tiffany M. Mallory_____
Tiffany M. Mallory
Assistant United States Attorney
Georgia Bar No. 744522
Post Office Box 2017
Augusta, GA 30903
(706) 724-0517
E-Mail:  Tiffany.Mallory@usdoj.gov